UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA CASSIDY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
    _____/

Case No. 1:16-CV-465

HON. PAUL L. MALONEY

## OPINION

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.[1] Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo*

---

[1] While Plaintiff brings this action *pro se*, the Court notes Plaintiff was represented by counsel at the administrative hearing.

review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-six years of age as of her alleged disability onset date. (PageID.58, 154.) She previously obtained a high school education and had been employed as a real estate sales agent, a machine packager, and as a retail cashier. (PageID.121–122, 310.) Plaintiff previously applied for benefits on February 23, 2011, alleging disability beginning May 30, 2010. That

2

application was denied by an ALJ on October 12, 2012, and does not appear to have been further pursued. (PageID.137–153.) In the instant matter, Plaintiff applied for benefits on April 30, 2013, again alleging disability beginning May 30, 2010. Plaintiff alleged she was disabled due to a herniated disc, manic depression, and lower back pain. (PageID.154, 166, 255–267.) Plaintiff's applications were denied on June 27, 2013, after which time she requested a hearing before an ALJ. (PageID.181–191.) On November 24, 2014, Plaintiff appeared with her counsel before ALJ Christopher Helms for an administrative hearing with testimony offered by Plaintiff and a vocational expert (VE). (PageID.83–135.) In an unfavorable decision dated December 5, 2014, the ALJ found Plaintiff was not disabled. (PageID.58–82.) On March 24, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2]1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.    An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.    If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.    If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Helms determined that Plaintiff's claim failed at step five. The ALJ began by acknowledging Plaintiff's prior application for benefits, and stating he found no reason why that application should not remain final. (PageID.62.) Applying the doctrine of *res judicata*, the ALJ concluded the prior decision was administratively final, and stated that he would only consider the evidence concerning the period subsequent to that decision, dated October 12, 2012. (PageID.62.) Proceeding with the evaluation, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the prior decision, October 12, 2012. (PageID.64.) At step two, the ALJ found Plaintiff suffered from the severe impairments of: (1) multilevel degenerative disc disease; (2) the late effects of varicose veins and long-term anticoagulant therapy; (3) a dysthymic disorder; and (4) an obese body habitus. (PageID.64–65.) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.66–69.) At step four, the ALJ found that Plaintiff retained the RFC based on all the

4

impairments to perform:

> sedentary work[3] as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can only occasionally balance, stoop, kneel, crouch, crawl, and/or climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. However, the claimant requires the option to alternate between sitting and standing for five to ten minutes, every thirty minutes. The claimant should avoid all exposure to work at unprotected heights, and around moving, mechanical parts. Lastly, the claimant is limited to performing simple, routine, and repetitive tasks and making simple, work-related decisions.
>
> [3] The Regulations define **sedentary work** as the ability to occasionally lift 10 pounds maximum, stand and/or walk for up to 2 hours in an 8 hour work period, and sit for up to 6 hours in an 8 hour work period (20 CFR 404.1567, 416.967, and SSR 83-10).

(PageID.69) (emphasis in original.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.75.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as an assembler (2,000 regional and 40,000 national positions), packager (2,000 regional and 35,000 national positions), and office helper (2,100 and 80,000 national positions). (PageID.122–129.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.76.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from May 30, 2010, through December 5, 2014, the date of decision. (PageID.77.)

## DISCUSSION

On July 6, 2016, the Court issued a Notice Regarding Consent and Directing Filing of Briefs. (ECF No. 9.) With respect to the filing of briefs, the Court stated that "Plaintiff's initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." (PageID.964.) Plaintiff's initial brief, as well as her two supplemental filings, fail to identify any alleged error supporting relief in this matter. (*See* ECF Nos. 17, 19, 21.)

Nevertheless, given Plaintiff's *pro se* status, the Court has interpreted Plaintiff's brief indulgently which leads the Court to conclude that Plaintiff has asserted the two claims addressed below.

### 1. The ALJ's Evaluation of the Evidence.

Plaintiff claims the Commissioner made a factual error in her evaluation of the evidence in two respects: first, by referencing a May 29, 2013, treatment record from the Allegan Psychological Service and, second, by stating Plaintiff's physicians found she was not a surgical candidate. (PageID.977, 980.) In assessing a claimant's RFC, Social Security Ruling 96-8p requires that the assessment include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96–8P, 1996 WL 374184, at *7 (July 2, 1996).

The first error that Plaintiff references appears in the agency's initial June 27, 2013, denial where it was noted that the agency's decision was made, in part, on records from Allegan Psychological Serices. (PageID.181.) Plaintiff has submitted a letter from Allegan Psychological Service stating that she was not a patient at that facility. (PageID.294.) The Court finds no

reversible error here for two reasons. First, this appears to be a harmless scrivener's error as there is a record of the same date from Allegan Community Mental Health. (PageID.721.) Second, this alleged error is from the agency's initial disability decision. It does not appear in the ALJ's decision that became the final decision of the Commissioner. Indeed, the ALJ noted he was not bound by the prior decision and had taken a "fresh and new" look at the evidence. (PageID.86.) This earlier error, therefore, does not appear to be contained in the ALJ's final decision, and accordingly is not subject to this Court's jurisdiction. *See Brown v. Comm'r of Soc. Sec.*, No. 1:08-CV-183, 2009 WL 465708, at *5 (W.D. Mich. Feb. 24, 2009).

As for the claim regarding her surgery, Plaintiff does not reference a specific portion of the ALJ's decision. It appears, however, she believes the ALJ erred in making the following statement: [T]he claimant testified that her physician told her she needed surgery, yet the record reflected that [it] was a suggestion[.]" (PageID.74.) Here, the ALJ has referenced an October 15, 2014, treatment note from Dr. Sonia Eden, M.D. In that note, the doctor stated "I have told [Plaintiff] she is a candidate for a surgical fusion or stabilization of the spondylolisthesis, and this may help with her radicular leg pain. She has also told me she is a smoker. I have shared with [Plaintiff] that given that she has Meridian Health, she would have to stop smoking in order to have a fusion to ensure that she heals appropriately. At this point she would like to think about her options. She will contact us in the future and let is know how she would like to proceed." (PageID.955.) The ALJ's description of this record was not unreasonable. Accordingly, this claim of error is rejected.[3]

---

[3] Though not raised in her submissions to this Court, in her letter to the Appeals Council, Plaintiff raised an argument similar to the above by disputing the ALJ's statement that she attends church multiple times a week, and states she does not know where the ALJ got that information from. (PageID.46, 67.) The ALJ's observation, however, is consistent with a primary assessment of service and support needs at Allegan Community Mental Health (Allegan CMH)

## 2. The ALJ's RFC Determination is Supported by Substantial Evidence.

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8P, 1996 WL 374184 at *1 (July 2, 1996); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir. 2010). It is further defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404. Subpt. P, App. 2 § 200.00(c). With respect to mental abilities, the regulations provide that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 405.1545(c), 416.945(c). The thrust of Plaintiff's argument is that the RFC does not fully account for her impairments. But Plaintiff fails to point to records indicating these impairments impose on her limitations greater than those accounted for in the RFC.

As an initial matter, much of Plaintiff's submissions concern her condition outside the relevant time period of October 12, 2012, through December 5, 2014. Plaintiff reports, for example, treatment for knee pain and dizzy spells in 2016. (PageID.978, 987.) She also points to a diagnosis of fibromyalgia in 2015. (PageID.982.) Plaintiff further points to treatment for arthritis in her knee and shoulders, as well as for an ankle fracture. (PageID.979.) To the extent Plaintiff

---

on November 30, 2012, where Plaintiff reported attending church on Sunday and Bible Study on Thursday. (PageID.672.)

claims that she is unable to work because of issues subsequent to the ALJ's decision, her recourse is in the filing of a new application, rather than in this action.

Regarding Plaintiff's allegation that the ALJ's RFC assessment failed to fully account for her impairments during the relevant period, the Court disagrees. Plaintiff contends, for example, that she was unable to work because of her headaches. But the record before the ALJ contained very little treatment for Plaintiff's headaches. For example, on January 22, 2013, Dr. Kelly Ash recommended Plaintiff keep a headache diary and get an eye exam to treat her headaches. Plaintiff was treating her headaches with Tylenol. (PageID.413.) At other times, Plaintiff's headaches were listed among a plethora of other treatment, and they were generally treated with medication. (PageID.438.) Notably, Plaintiff points to no record, nor can the Court find one, demonstrating how her headaches rendered her incapable of performing the activities contemplated in the RFC.

Much of the record contains treatment notes concerning Plaintiff's degenerative disc disease and low back pain. But again, while the Court does not doubt that Plaintiff is limited because of her back condition, none of these records indicate that Plaintiff is limited to an extent greater than that accounted for in the RFC. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir.1988)); *see, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition"). This case would perhaps be different if these records were accompanied by an explanation from Plaintiff's physicians detailing how Plaintiff's records indicate she has restrictions greater than those accounted for in the RFC. But in any event, it is the ALJ who has the

ultimate responsibility for assessing a Plaintiff's RFC, based on all of the relevant evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the ALJ gave a thorough and accurate recitation of the medical evidence, and then formulated Plaintiff's RFC. This determination is supported by substantial evidence.

On July 18, 2013, Plaintiff underwent a lumbar MRI scan. (PageID.884.) There was facet arthrosis through the lumbar spine, with a small left posterolateral disc protrusion at L5/S1, which contributed to a mild neural foraminal steonsis. There was no clear evidence of nerve root compromise. (PageID.885.) There was also a small posterior disc extrusion at T11-12, but with no compromise of the conus medullaris. (PageID.885.) At several subsequent appointments, it was noted that Plaintiff had a slow gait, and her back had a moderately limited range of motion. But she had a negative straight leg raise test and full strength in her legs. (PageID.745, 751, 755.) While Dr. Sonia Eden did indicate Plaintiff was a candidate for surgery, Plaintiff stated she wanted to think about her options. (PageID.955.) Nothing here is inconsistent with the ALJ's evidence summary, and furthermore does nothing to indicate the extent of her abilities.

On her function report, Plaintiff reported being able to prepare meals with help from her children. (PageID.326.) She further reported she could do some house cleaning and laundry. (PageID.326.) She is able to drive and ride in a car, and go shopping. (PageID.327.) She can go to church and doctor's appointments. (PageID.328.) While these records certainly indicate that Plaintiff is limited due to her degenerative disc disease, they do not support her assertion that she is incapable of performing a reduced range of sedentary work.

In sum, the ALJ found, after considering the entire record, that Plaintiff was capable of performing a reduced range of sedentary work. This determination is supported by substantial

evidence. Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.

Dated: April 12, 2017   /s/ Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　　PAUL L. MALONEY
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge